136.   At its inception, the NMDP had a registry of 8,000 potential donors

137.   The NMDP now has over seven million potential donors in its database.

138.   The size of the registry overstates the number of potential donors because a sizeable fraction of donors on the registry cannot be located if their name turns up as a possible match for a dying patient, and some fraction of potential donors who can be located are not willing to donate.

139.   Caucasian potential donors are available and willing to donate about 65 percent of the time.

140.   Hispanic and Asian potential donors are available and willing to donate about 50 percent of the time.

141.   African-American potential donors are available and willing to donate about 34 percent of the time.

142.   Caucasian patients can find a matching, available, and willing donor about 75 percent of the time.

143.   Hispanic patients find a matching, available, and willing donor about 45 percent of the time.

COMPLAINT

1      144.   Asian-American patients find a matching, available, and willing

2   donor about 40 percent of the time.

3      145.   African-American patients find a matching, available, and

4   willing donor about 25 percent of the time.

5   **Plaintiff MoreMarrowDonors.org and Strategic Financial Incentives**

6

7      146.   Plaintiff MoreMarrowDonors.org (MoreMarrowDonors.org) is

8   a California nonprofit corporation that wants to operate a pilot program

9   offering strategic financial incentives to marrow-cell donors.  Specifically,

10   MoreMarrowDonors.org wants to provide a $3,000 award to the donors

11   whose marrow cells are most needed.

12      147.   MoreMarrowDonors.org will offer compensation in three forms

13   only: (1) a scholarship; (2) a housing allowance; or (3) a gift to a charity of

14   the donor's choice.

15      148.   MoreMarrowDonors.org expects compensation to affect

16   potential donors in three critical ways:

17          a.   More people with rare marrow-cell types such as

18             minorities will sign up for the national registry;

19          b.  More people will stay in touch with the registry so they

20             can be found if they turn up as a match; and

21          c.  More people will go through with the donation process.

149.   Plaintiff MoreMarrowDonors.org will provide the awards using funds raised from third-party philanthropists.

150.   MoreMarrowDonors.org will have absolutely no involvement in the transplant process, which is strictly the purview of medical professionals.

151.   MoreMarrowDonors.org will not attempt to determine the identity of patients or put donors in touch with patients.  By law, donors and patients are matched anonymously and must remain unknown to each other for a year after any transplant.

152.   MoreMarrowDonors.org will also not attempt to obtain donors for specific, identified patients.

153.   The compensation offered by MoreMarrowDonors.org will be fixed at $3,000 and MoreMarrowDonors.org will not engage in any negotiation with any donor.

154.   MoreMarrowDonors.org will require the following of a donor in order for the donor to obtain a reward for donating:

     a.  Potential donors must register with MoreMarrowDonors.org and sign up to the national registry if they have not already done so;

COMPLAINT

        b. Once registered, in order to obtain the reward, the donor must provide MoreMarrowDonors.org with a disclosure signed by the presiding transplant doctor indicating that the MoreMarrowDonors.org member has informed the doctor of the member's intention to collect compensation after donating. This disclosure will also require the donor to be completely honest about her own medical history; and

        c. Finally, to collect the award, the donor must provide signed proof from a medical professional that the donation occurred.

155. In its initial phase, MoreMarrowDonors.org will offer compensation only to minorities and people of mixed race since they are the most likely to have the rarest marrow-cell types.

156. Because MoreMarrowDonors.org's goal is to increase the supply of marrow-cell donors whose marrow cells are rare, MoreMarrowDonors.org will also develop a method for identifying rare marrow-cell types using proxies that are even more accurate than race, and offer compensation to people with those marrow-cell types.

COMPLAINT

1    157.   MoreMarrowDonors.org has received a $25,000 pledge from a

2    private charitable foundation.  By the terms of the gift, most of these pledged

3    funds are restricted to being spent on implementing

4    MoreMarrowDonors.org's above-described donor-incentive program.

5    158.   MoreMarrowDonors.org intends to raise further funds to

6    support its pilot program, including medical-research grants.

7    159.   MoreMarrowDonors.org will be able to raise ample funds to

8    support its pilot program if it is legally possible to implement it.

9    160.   The chair of MoreMarrowDonors.org's board, Shaka Mitchell,

10   has experience operating and growing nonprofit organizations to fulfill their

11   missions.

12   **MoreMarrowDonors.org's Proposed Incentive Program Is Illegal**

13   161.   MoreMarrowDonors.org's plan to offer strategic compensation

14   such as scholarships to minority marrow-cell donors is considered organ

15   selling under the National Organ Transplant Act (NOTA) of 1984, 42 U.S.C.

16   § 274e, and is a felony punishable by up to five years in prison.

17   162.   42 U.S.C. § 274e(a), reads in relevant part that it "shall be

18   unlawful for any person to knowingly acquire, receive, or otherwise transfer

19   any human organ for valuable consideration for use in human

20   transplantation[....]"

163. Section 274e(c) defines "human organ" as, among other things, "any subpart" of human "bone marrow," which necessarily includes loose marrow cells because, as explained in paragraphs 85 through 88, marrow cells are what doctors actually remove from a donor's bone marrow and transplant into a patient.

164. Section 274e(c)(2) provides that "valuable consideration" does not include "the reasonable payments associated with the removal, transportation, implantation, processing, preservation, quality control, and storage of a human organ or the expenses of travel, housing, and lost wages incurred by the donor of a human organ in connection with the donation of the organ."

165. The specific incentives in MoreMarrowDonors.org's pilot program—a $3,000 scholarship, a $3,000 housing allowance for rent or a mortgage, or a $3,000 gift to the charity of a marrow-cell donor's choice— do not fall under any of the statutory exceptions to the term "valuable consideration." Therefore, the program for strategic incentives that MoreMarrowDonors.org and the other Plaintiffs want to implement is proscribed by 42 U.S.C. § 274e.

166. Defendant U.S. Attorney General and his agents investigate violations of, and enforce through arrest and prosecution, the criminal

COMPLAINT

1  provisions of NOTA.  Defendant U.S. Attorney General will enforce the

2  National Organ Transplant Act through investigation, arrest, and prosecution

3  if Plaintiffs implement a high-profile, nationwide pilot program—involving

4  literally thousands of potential marrow-cell donors and dozens or hundreds

5  of actual donors—that plainly violates 42 U.S.C. § 274e.

6  **Congress Included Bone Marrow in the NOTA by Mistake**

7  167.   Congress included a prohibition on providing valuable

8  consideration for organs in the National Organ Transplant Act to outlaw

9  markets in solid organs such as kidneys.

10  168.   In more than 1,500 pages of legislative history associated with

11  the National Organ Transplant Act, virtually every page is devoted to the

12  problem of too few kidney and liver donors, and primarily the failure of

13  people to agree to donate their organs after death.

14  169.   There is barely a mention of bone marrow in the legislative

15  history and absolutely no substantive discussion of any issue related to bone

16  marrow, much less any substantive discussion of why bone marrow was

17  included in the statutory definition of "human organ."

18  170.   None of the governmental interests that underlie Congress's

19  desire to prohibit markets in solid organs applies to marrow cells.

32                          COMPLAINT

1    171.   One of the interests motivating Congress's prohibition on the

2    sale of solid organs was Congress's concern that a market for organs would

3    result in the flow of organs from poor people to rich people.

4    172.   This concern has no application to marrow cells because there

5    can be no "market" in marrow cells.  While a solid organ (like a kidney) can

6    be sold to the highest bidder among many potential recipients, the close

7    genetic match required for a marrow-cell transplant makes an open market

8    of that kind impossible.

9    173.   This concern also has no application to incentives that take the

10   form of a fixed financial incentive from a third party like

11   MoreMarrowDonors.org.

12   174.   One of the interests motivating Congress's prohibition on the

13   sale of solid organs was Congress's concern that solid-organ donors who

14   were enticed to sell an organ would be left with a permanent deficit, such as

15   going through the rest of their lives with only one kidney.

16   175.   This concern has no application to marrow cells because

17   marrow cells regenerate completely, and a marrow-cell donor will go

18   through the rest of her life with the same amount of marrow cells she would

19   otherwise have had.

COMPLAINT

1    176.   One of the interests motivating Congress's prohibition on the

2    sale of solid organs was Congress's concern that transplants of solid organs

3    like kidneys require invasive surgery.

4    177.   This concern has no application to marrow cells because

5    marrow-cell donation is not invasive and is no more dangerous than getting

6    one's wisdom teeth removed.

7    178.   In more than 1,500 pages of legislative history associated with

8    the National Organ Transplant Act, there is no explanation for why marrow

9    cells should not be treated like other renewable or inexhaustible cells such as

10   blood cells, sperm cells, and egg cells.

11   179.   The report of the Senate Committee on Labor and Human

12   Resources, which was issued three days before Senate Bill 2048 (a late draft

13   of NOTA) was published in the Congressional Record, expressly stated that

14   the prohibition on organ sales was not "meant to include blood and blood

15   derivatives, which can be replenished and whose donation does not

16   compromise the health of the donor."  S. Rep. No. 98-382 (April 6, 1984).

17   180.   The House of Representatives and the Senate issued a

18   Conference Report on the meaning of the final bill they sent to President

19   Reagan.  This Report stated that the "term 'human organ' is not intended to

COMPLAINT

1    include replenishable tissues such as blood or sperm." Conf. Rep. No. 98-

2    1127 (Oct. 2, 1984).

3        181.   On October 19, 1984, President Reagan signed into law the bill

4    accompanying Conference Report 98-1127.  Weekly Compilation of

5    Presidential Documents, Vol. 20, No. 42 (1984): Oct. 19, Presidential

6    Statement.

7        182.   When NOTA was enacted, it was not the intent of Congress to

8    criminalize compensation for renewable or inexhaustible cells such as blood

9    cells, sperms cells, and egg cells.

10       183.   The plain language of NOTA does not cover renewable or

11   inexhaustible cells such as blood cells, sperm cells, and egg cells.

12       184.   Blood cells, sperm cells, and egg cells are routinely acquired for

13   compensation.

14       185.   Bloodstream components, like platelets, are routinely harvested

15   using exactly the same type of apheresis machine that doctors use to harvest

16   marrow cells.  The application of apheresis technology to marrow-cell

17   donation had not yet been developed when NOTA was passed.

18       186.   Tissues are biological matter organized into a definite structural

19   material that has a definite structural function.  Tendons, for example, are

COMPLAINT

classified as connective tissue and formed by parallel arrays of closely packed collagen fibers.

187.   Marrow cells are not tissues because they lack any degree of structural organization.  Marrow cells are undifferentiated loose cells.

188.   Organs are composed of specific tissues that, due to their high degree of organizational complexity, perform a function necessary to sustain life.  The heart, for example, is an organ composed mainly of myocardial tissue and composed sporadically of nerve and connective tissues.

189.   Because marrow cells are not tissues, they cannot be organs by definition.

190.   Marrow cells are like other loose cells found in the human body that lack the structural organization of even tissues, such as red blood cells, white blood cells, platelets, sperm cells, or egg cells.

### INJURY TO PLAINTIFF DR. WAGNER

191.   Plaintiff Wagner believes that providing marrow-cell donors with financial incentives could make a serious impact on the persistent shortage of marrow-cell donors, especially for minorities and other patients with rare marrow-cell types.

192.   The idea of providing incentives to marrow-cell donors first occurred to Plaintiff Wagner during a medical conference several years ago

in which medical professionals described how women or couples with fertility problems routinely compensate a woman who donates her eggs, which are just individual cells.

193.   Although eggs are not renewable per se, a healthy woman has tens of thousands more than she will use in a lifetime so eggs are for all practical purposes inexhaustible.

194.   Plaintiff Wagner realized on the basis of his medical expertise that marrow-cell donation is actually much less invasive and much less risky than egg donation.

195.   Plaintiff Wagner realized that this model could be adapted to the marrow-cell context and be used to produce more and better marrow-cell transplants to save countless lives.

196.   Plaintiff Wagner has never offered financial incentives to potential marrow-cell donors because he is aware that such incentives violate the federal criminal law codified in the National Organ Transplant Act (NOTA).

197.   It is generally understood by medical professionals in the marrow-cell transplant field that providing incentives to marrow-cell donors is a crime.

COMPLAINT

198.   Plaintiff Wagner is unwilling to commit a federal crime both because he is concerned about prosecution and because committing a federal crime would adversely affect his standing in the medical community, potentially resulting in the loss of his license to practice medicine.

199.   Plaintiff Wagner's concerns are objectively reasonable.

200.   In the past, Plaintiff Wagner has not worked with outside groups offering financial incentives to potential marrow-cell donors because he is unwilling to commit a federal crime.

201.   But for the fact that doing so is prohibited by federal statute, Plaintiff Wagner would offer financial incentives to potential marrow-cell donors under appropriate ethical and medical strictures, work with outside groups offering financial incentives to potential marrow-cell donors, or both.

202.   In Plaintiff Wagner's professional judgment, but for the prohibition on providing financial incentives to potential marrow-cell donors, he would have been able to save the lives of more of his past patients by transplanting marrow cells from a matched donor who received financial incentives.

203.   In Plaintiff Wagner's professional judgment, but for the prohibition on providing financial incentives to potential marrow-cell donors, he would be able to save the lives of more of his current and future

COMPLAINT

1  patients by transplanting marrow cells from matched donors who received

2  financial incentives.

3      204.   Plaintiff Wagner specifically intends to work with

4  MoreMarrowDonors.org and to transplant marrow cells from donors who

5  will receive incentive payments from MoreMarrowDonors.org, but is

6  currently prohibited from doing so by law.

7      205.   If compensation for marrow-cell donation were legal, Plaintiff

8  Wagner would immediately work with Plaintiff MoreMarrowDonors.org to

9  establish medical and ethical criteria for donor eligibility for compensation,

10  advise MoreMarrowDonors.org on scientific issues concerning donor-patient

11  matching, and devise parameters for a pilot program to track the empirical

12  results of strategic compensation to ascertain the extent to which they

13  alleviate the shortage of unrelated marrow donors.  Plaintiff Wagner is not

14  currently taking any of these steps because they would be futile because

15  neither he nor MoreMarrowDonors.org are willing to violate federal law

16  (and risk prosecution) by actually providing incentives to marrow-cell

17  donors.

18      206.   Like all or nearly all marrow-cell-transplant doctors, Plaintiff

19  Wagner performs marrow-cell transplants as a last-resort treatment for

COMPLAINT

1   patients with advanced stages of cancer or other deadly diseases for which

2   there is no realistic hope for survival without the transplant.

3       207.   As described above in paragraphs 105 through108, preparing a

4   patient for a marrow-cell transplant is extremely dangerous for the patient,

5   and, on average, half of adults who receive marrow-cell transplants die

6   within two years.

7       208.   Despite the extreme risks associated with marrow-cell

8   transplantation, adult patients and their doctors are presumed by the medical

9   profession and the law as capable of making an informed decision to

10   undertake those risks.

11       209.   Because of their advanced illnesses, it is generally not

12   practicable for Plaintiff Wagner's current or future patients to assert their

13   own rights in court to obtain marrow cells from a compensated donor.

14       210.   In his capacity as a physician, Plaintiff Wagner asserts in this

15   action the rights of his current, future, and (where applicable) past patients

16   who wish to obtain marrow cells from a compensated donor, in addition to

17   asserting his own rights.

18       211.   As an expert in marrow-cell transplantation who has been and

19   continues to be in direct communication with the critically ill patients whose

40                                                              COMPLAINT

1    rights are being asserted, Plaintiff Wagner can adequately represent the

2    interests of these absent patients.

3         212.   As a direct result of (1) his fear of enforcement by Defendant of

4    42 U.S.C. § 274e, and (2) the fact that a doctor of Plaintiff Wagner's

5    expertise and international notoriety must avoid even the appearance of

6    engaging in the practice of medicine in a way that violates federal criminal

7    law, Plaintiff Wagner is injured because 42 U.S.C. § 274e imposes economic

8    and noneconomic harms by preventing him and medical professionals under

9    his supervision from participating in the collection or transplantation of

10   marrow cells provided by a donor who receives financial incentives from

11   MoreMarrowDonors.org.

12        213.   Plaintiff Wagner is further injured in his capacity as the

13   representative of past, present, and future patients who would benefit from

14   financial incentives like those that MoreMarrowDonors.org intends to

15   implement.  Plaintiff Wagner has in the past had, currently has, and will in

16   the future have patients dying of fatal blood diseases for whom there is no

17   match on the national registry or for whom there is a match but that matched

18   donor is unavailable or unwilling to provide marrow cells.

19        214.   Absent his fear of prosecution under 42 U.S.C. § 274e and of

20   the reputational and professional harms that would be caused by his

COMPLAINT

1  violation of federal law, Plaintiff Wagner would engage in conduct that is

2  presently statutorily forbidden and has concrete plans to do so. Specifically,

3  Plaintiff Wagner would begin transplanting marrow cells from compensated

4  donors as soon as reasonably possible.

5  **INJURY TO PLAINTIFF MOREMARROWDONORS.ORG**

6      215.  As a direct result of (1) its fear of enforcement by Defendant of

7  42 U.S.C. § 274e, and (2) the fact that a California nonprofit corporation is

8  bound by California law not to violate any laws, including 42 U.S.C. § 274e,

9  Plaintiff MoreMarrowDonors.org cannot award financial incentives such as

10  scholarships to marrow-cell donors because doing so violates the statutory

11  proscription in 42 U.S.C. § 274e against providing "valuable consideration"

12  for "any subpart" of "bone marrow."

13      216.  Plaintiff MoreMarrowDonors.org is further injured because it

14  does not know whether 42 U.S.C. § 274e can be constitutionally applied to

15  MoreMarrowDonors.org's financial incentives program for marrow donors.

16      217.  MoreMarrowDonors.org has received a substantial grant of

17  charitable funds, the overwhelming majority of which may be spent only on

18  providing financial incentives to marrow-cell donors.

19      218.  If 42 U.S.C. § 274e can be constitutionally applied to

20  MoreMarrowDonors.org's financial incentives program for marrow-cell

COMPLAINT

1  donors, then MoreMarrowDonors.org cannot spend its restricted funds and

2  will be forced to forfeit those funds to another charitable organization yet to

3  be determined. If, on the other hand, § 274e cannot be constitutionally

4  applied to the financial incentives program, then MoreMarrowDonors.org

5  will use those restricted funds for their intended purpose.

6  219.  Absent a declaration from this Court, MoreMarrowDonors.org

7  does not know if it can spend the restricted funds that it currently possesses

8  without suffering adverse legal consequences under federal and California

9  law.

10  220.  Absent its fear of prosecution under 42 U.S.C. § 274e, Plaintiff

11  MoreMarrowDonors.org would engage in conduct that is presently

12  statutorily forbidden, specifically including providing compensation to

13  marrow cell donors who met the requirements described in paragraphs 146

14  through156.

15  221.  Specifically, if not for the prohibition on providing valuable

16  consideration to marrow-cell donors in 42 U.S.C. § 274e, Plaintiff would

17  immediately begin registering potential donors to eventually receive

18  incentives, would advertise the availability of incentives for marrow-cell

19  donation, and would actively solicit additional funds to be applied to its

20  grant program.

COMPLAINT

1    222.   MoreMarrowDonors.org also has concrete plans to collaborate

2    with medical experts, specifically including Plaintiff Wagner, to devise

3    medical criteria for determining the eligibility of potential donors for

4    compensation, work with experts in ethics to ensure that the compensation

5    program satisfies principles of informed consent, and work with economic

6    and medical experts to establish a method of tracking the effectiveness of the

7    compensation program.

8    223.   MoreMarrowDonors.org will as rapidly as possible create a

9    nationwide network of tens of thousands or even hundreds of thousands of

10   potential marrow-cell donors in order to implement its compensation plan.

11   224.   MoreMarrowDonors.org cannot offer incentives for marrow-

12   cell donation, advertise the availability of incentives for marrow-cell

13   donation, or solicit funds to be used providing incentives for marrow-cell

14   donation without risking serious legal consequences, including criminal

15   prosecution, for itself, its staff, its marrow-cell donors, its philanthropic

16   supporters, and any outside personnel (including medical professionals) with

17   whom it works.

18   **INJURY TO OTHER PLAINTIFFS**

19   225.   As a direct result of his fear of prosecution under 42 U.S.C. §

20   274e, Plaintiff Akiim DeShay is harmed in his capacity as a member of the

44

COMPLAINT

1  board of directors of MoreMarrowDonors.org because he cannot execute his

2  obligation to implement the organization's financial-incentives pilot

3  program.  Plaintiff DeShay is further harmed in his personal capacity

4  because he cannot use the activist network he created through

5  www.BlackBoneMarrow.com to raise funds for, and then apply those funds

6  to, a financial incentive program for marrow-cell donors.  Absent his fear of

7  prosecution under 42 U.S.C. § 274e, Plaintiff DeShay would engage in

8  conduct that is presently statutorily forbidden, specifically including

9  implementing the concrete objectives of MoreMarrowDonors.org, raising

10  money for MoreMarrowDonors.org, and causing that money to be spent on

11  providing financial incentives to marrow-cell donors.

12       226.   As a direct result of her fear of prosecution under 42 U.S.C. §

13  274e, Plaintiff Doreen Flynn is harmed because she cannot take concrete

14  steps calculated to safeguard her three daughters against the possibility that

15  matched, available, and willing donors will not be found when it becomes

16  necessary for them to undergo marrow-cell transplants.  These steps will

17  include raising money for and promoting MoreMarrowDonors.org's

18  financial-incentives pilot program.  Because there is a very real possibility

19  that at least one of her daughters will need a second transplant from the same

20  matching donor if such a person is found, Plaintiff Flynn also wants the

1  option of compensation available to ensure that a matched donor remains

2  available and willing for a second donation.  Absent her fear of prosecution

3  under 42 U.S.C. § 274e, Plaintiff Flynn would engage in conduct that is

4  presently statutorily forbidden.

5  227.   As a direct result of his fear of prosecution under 42 U.S.C. §

6  274e, Plaintiff Mike Hamel is harmed in his capacity as a member of the

7  board of directors of MoreMarrowDonors.org because he cannot execute his

8  obligation to implement the organization's financial-incentives pilot

9  program.  Plaintiff Hamel is further harmed in his personal capacity because

10  he cannot use the network he created through his blog, Open Mike, to raise

11  funds for, and then apply those funds to, a financial-incentive program for

12  marrow cell donors.  Finally, Plaintiff Hamel is harmed in that he is a

13  lymphoma patient who may need a marrow-cell donation from an unrelated

14  donor and he wants a financial-incentive program available to maximize his

15  chances of finding a matching, available, and willing unrelated donor.

16  Absent his fear of prosecution under 42 U.S.C. § 274e, Plaintiff Hamel

17  would engage in conduct that is presently statutorily forbidden, specifically

18  including implementing the concrete objectives of MoreMarrowDonors.org,

19  raising money for MoreMarrowDonors.org, and causing that money to be

20  spent on providing financial incentives to marrow-cell donors.

COMPLAINT

228.   As a direct result of his fear of prosecution under 42 U.S.C. § 274e, Plaintiff Mark Hachey is harmed because he cannot take concrete steps calculated to safeguard his son against the possibility that a matched, available, and willing donor will not be found if his mixed-race son, who received a mismatched cord blood transplant, needs another transplant. These steps will include raising money for and promoting MoreMarrowDonors.org's financial incentives pilot program.  Absent his fear of prosecution under 42 U.S.C. § 274e, Plaintiff Hachey would engage in conduct that is presently statutorily forbidden.

229.   As a direct result of his fear of prosecution under 42 U.S.C. § 274e, Plaintiff Kumud Majumder is harmed because he cannot take concrete steps calculated to safeguard his son against the possibility that a matched, available, and willing donor will not be found if his son, who received a marrow-cell transplant in April 2009, needs another transplant.  There is no person who is a perfect match for Plaintiff Majumder's son.  These steps will include raising money for and promoting MoreMarrowDonors.org's financial-incentives pilot program.  Absent his fear of prosecution under 42 U.S.C. § 274e, Plaintiff Majumder would engage in conduct that is presently statutorily forbidden.

COMPLAINT

## CLAIMS

### Count One: Equal Protection

230.   Plaintiffs incorporate and re-allege each and every allegation in paragraphs 1 through 229 as though fully set forth herein.

231.   The unconditional ban in the National Organ Transplant Act on providing "valuable consideration" for donation of "any subpart" of "bone marrow" violates the right of the Plaintiffs—and, where applicable, the right of Plaintiff Wagner's patients—to equal protection under the Fifth Amendment to the U.S. Constitution.

232.   The National Organ Transplant Act arbitrarily and irrationally treats dissimilar things similarly by defining "any subpart" of "bone marrow," which includes marrow cells, as a "human organ."  Because of this prohibition, it is illegal to offer any "valuable consideration" for marrow cells—even though marrow cells are neither organs nor tissues, and are instead completely renewable loose cells.

233.   The National Organ Transplant Act also arbitrarily and irrationally treats similar things dissimilarly by prohibiting the payment of "valuable consideration" for marrow cells, but not prohibiting the payment of "valuable consideration" for any other renewable or inexhaustible loose-

48

COMPLAINT

1   cell types that are commonly donated such as the various types of blood

2   cells, sperms cells, and egg cells.

3        234.   Plaintiffs, and Plaintiff Wagner's patients, are irreparably

4   harmed and continue to be irreparably harmed by an objectively reasonable

5   fear that Defendant will enforce 42 U.S.C. § 274e against Plaintiffs for their

6   participation in a high-profile, nationwide pilot program involving tens or

7   even hundreds of thousands of potential marrow-cell donors that offers

8   strategic incentives to those potential marrow-cell donors in order to make

9   more marrow-cell donations happen overall.

10                    **Count Two: Due Process**

11       235.   Plaintiffs incorporate and re-allege each and every allegation in

12   paragraphs 1 through 234 as though fully set forth herein.

13       236.   The unconditional ban in the National Organ Transplant Act on

14   providing "valuable consideration" for donation of "any subpart" of "bone

15   marrow" violates the right of the Plaintiffs—and, where applicable, the right

16   of Plaintiff Wagner's patients—to substantive due process under the Fifth

17   Amendment to the U.S. Constitution.

18       237.   Plaintiffs and Plaintiff Wagner's patients have a liberty interest

19   in being able to participate in safe, non-experimental, lifesaving medical

20   treatment.  The Plaintiffs, and Plaintiff Wagner's patients, want to exercise

1   this liberty interest by offering strategic financial incentives to marrow-cell

2   donors, but cannot because the National Organ Transplant Act arbitrarily

3   and irrationally defines marrow cells as "human organs" and thus

4   criminalizes the proposed pilot program as an act of organ selling.

5        238.   Forbidding Plaintiffs and Plaintiff Wagner's patients from

6   participating in a pilot program designed to ascertain if strategic financial

7   incentives to marrow-cell donors can save lives does not rationally advance

8   any legitimate government interest.

9        239.   Plaintiffs, and Plaintiff Wagner's patients, are irreparably

10   harmed and continue to be irreparably harmed by an objectively reasonable

11   fear that Defendant will enforce 42 U.S.C. § 274e against Plaintiffs for their

12   participation in a high-profile, nationwide pilot program involving tens or

13   even hundreds of thousands of potential marrow-cell donors that offers

14   strategic incentives to those potential marrow-cell donors in order to make

15   more marrow-cell donations happen overall.

**PRAYER FOR RELIEF**

17        WHEREFORE, Plaintiffs respectfully request relief as follows:

18   A.   Entry of final judgment against Defendant declaring that 42

19        U.S.C. § 274e violates the Due Process Clause of the Fifth

20        Amendment to the U.S. Constitution as applied to Plaintiffs;

COMPLAINT

1    B.    A permanent injunction forbidding further enforcement of 42

2          U.S.C. § 274e against Plaintiffs;

3    C.    An award of attorneys' fees, costs, and expenses; and

4    D.    For such further and equitable relief as the Court deems just and

5          proper.

6

7    Dated:  October 26, 2009

8    THE LAW OFFICES OF                    INSTITUTE FOR JUSTICE
9    JUSTIN SOBODASH                       Jeff Rowes*
10                                         Robert McNamara*
11   By: _Justin Sobodash_                 William Mellor*
12   Justin Sobodash                       *Pro hac vice pending
13
14              Attorneys for Plaintiffs
15            Doreen Flynn, John Wagner,
16            M.D., Akiim DeShay, Mike
17              Hamel, Mark Hachey,
18             Kumud Majumder, and
19              MoreMarrowDonors.org
20

COMPLAINT