TONY WEST
Assistant Attorney General
SHEILA M. LIEBER
MARCIA BERMAN (PA Bar No. 66168)
marcia.berman@usdoj.gov
Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Room 7132
Washington, D.C. 20530
Tel: (202) 514-2205/Fax: (202) 616-8470
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOREEN FLYNN, et al., | ) Case No. 2:09-cv-07772-VBF-AJW |
| Plaintiffs, | ) |
| v. | ) **DEFENDANT'S RESPONSE TO PLAINTIFFS' SURREPLY FILED IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| ERIC HOLDER, ATTORNEY GENERAL of the UNITED STATES, sued in his official capacity, | ) Fed. R. Civ. P. 12(b)(1), (b)(6) |
| Defendant. | ) Hearing Date: Mar. 15, 2010 ) Hearing Time: 1:30 p.m. ) Hearing Location: Courtroom 9 |
| | ) Before the Honorable Valerie Baker Fairbank |

I.   42 U.S.C. § 274e IS CONSTITUTIONAL UNDER RATIONAL BASIS REVIEW.

To satisfy rational basis review, a statutory classification, *taken as a whole*, must be rationally related to a legitimate governmental interest. *See Heller v. Doe*, 509 U.S. 312, 319-21 (1993). The rational relationship need not be perfectly tailored: "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.* at 321. A statute "does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (internal quotations omitted). Rather, the test "requires only that the statute, as a general matter, serve a legitimate governmental purpose." *Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005) (citing *Russell v. Hug*, 275 F.3d 812, 820 (9th Cir. 2002)).

Plaintiffs' argument that the Court must judge the rationality of Congress's including bone marrow in the prohibition of organ purchases as applied to what plaintiffs describe as their proposed pilot program, rather than as a general matter, "'is an impermissible attempt to ratchet up [the] standard of review from rational basis toward strict scrutiny.'" *Doe*, 419 F.3d at 1063 (quoting *Russell*, 275 F.3d at 820). Under rational basis review, the constitutionality of a statutory classification "cannot be determined on a person-by-person basis." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 85-86 (2000). The Supreme Court and the Ninth Circuit have repeatedly made clear that, under rational basis review, a plaintiff cannot challenge a generally rational statutory classification based on the particular circumstances of his or her individual case. *See, e.g., New York City Transit Auth. v. Beazer*, 440 U.S. 568, 592-93 (1979) (upholding under rational basis review Transit Authority rule against employing persons who use narcotic drugs, rejecting argument that rule was not rational as applied to plaintiffs who were receiving methadone treatment); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314-17 (1976) (upholding under rational basis review state law setting mandatory retirement age at 50 for police officers; classification furthers purpose of assuring physical preparedness of police,

even though plaintiff was in excellent health); *Weinberger v. Salfi*, 422 U.S. 749, 777, 781 (1975) (upholding under rational basis review duration-of-relationship Social Security eligibility requirements for surviving wives of deceased wage earners as rationally related to goal of preventing sham marriages, even though requirement excluded some legitimate claimants); *Doe*, 419 F.3d at 1063 (upholding under rational basis review statute prohibiting abortion funding as rationally related to government's legitimate interest in protecting potential life; rejecting as inconsistent with rational basis review plaintiff's argument that prohibition was not rational in her case because of her fetus's terminal condition); *Russell*, 275 F.3d at 819-20 (upholding under rational basis review court's requirement that members of its indigent defense panel be members of its bar and California's as rationally related to goal of ensuring competence of lawyers; rejecting as inconsistent with rational basis review plaintiff's argument that statute was irrational as applied to his case given his extensive experience); *Lipscomb v. Simmons*, 962 F.2d 1374, 1381-82 (9th Cir. 1992) (en banc) (upholding under rational basis review Oregon foster care statutory scheme which funds foster care placements with nonrelatives but not with relatives, finding a rational basis for the program as a whole, even though it causes unfavorable results in the cases of individual plaintiff children).[1]

---

[1] Plaintiffs attempt to distinguish *Doe* and *Russell* by ignoring the court's stated rationale, claiming that those are just as-applied cases in which the plaintiffs lost. For instance, plaintiffs claim that in *Doe*, the challenged funding restriction was rationally related to the legitimate governmental interest of protecting potential life, even as applied to the plaintiff's particular case of carrying an anencephalic fetus. But the court did not decide the case on this ground. Rather, the court rejected the plaintiff's contention that it must consider her personal circumstances when judging the reasonableness of the restriction, finding it to be inconsistent with rational basis review. *Doe*, 419 F.3d at 1063.

Plaintiffs are also wrong in claiming that we raised the argument that the rationality of 42 U.S.C. § 274e cannot be judged based on the particular circumstances of plaintiffs' pilot program for the first time in our reply brief. *See* Surreply at 1. To

1    These cases all involved constitutional challenges to legislative classifications, like the instant case. Plaintiffs claim that § 274e violates the equal protection guarantee by arbitrarily and irrationally treating renewable bone-marrow cells like nonrenewable solid organs rather than like other renewable cells, such as blood cells. *See* Complaint at Introduction. When legislatures enact statutes, they typically and appropriately make use of broad generalizations about large numbers of people, assuming that people who have a certain trait are similarly situated in relation to a particular governmental interest. *See, e.g., Murgia*, 427 U.S. 307 (concerning statute based on generalization that fitness declines with age). Legislatures cannot be expected to think about every factual situation that may arise and to determine whether the classification is rational as applied thereto. Rational basis review does not require legislatures to legislate with this level of precision.

In contrast, the cases cited in plaintiffs' surreply brief involved challenges to the discretionary enforcement of rules or policies by government officials to individuals. Rather than challenging legislative classifications based on broad generalizations, the plaintiffs in these cases claimed that a statute or rule was applied arbitrarily or irrationally in their individual cases. For example, in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), the challenged action was the city's denial of a special use permit to the plaintiff to operate a group home for the mentally retarded. The plaintiff claimed that if the residents of the group home were not mentally retarded, its use would have been permitted under the city's zoning

---

the contrary, we specifically argued in our Motion to Dismiss that Congress's concern about extortion justifies the inclusion of bone marrow in § 274e, regardless of the fact that plaintiffs allege that their pilot program will be structured to avoid this and other concerns. Def.'s Mtn. to Dismiss at 21 n. 8. And plaintiffs responded to this argument in their opposition to the Motion to Dismiss by arguing that certain rationales do not apply to the particular facts of plaintiffs' pilot program, they just did not cite any authority in support of that proposition. Pls.' Opp. to Def.'s Mtn. to Dismiss at 19-22.

ordinance. *City of Cleburne* thus involved a traditional "as applied" challenge in the sense that the permitting requirement was alleged to have been arbitrarily enforced or applied by the responsible government officials. *See also Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336 (1989) (constitutional challenge to county tax assessor's valuation of plaintiff's property based on recent purchase price and her failure to assess properties not recently sold similarly); *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869 (1985) (claim by insurance companies not incorporated in Alabama that Alabama domestic preference tax statute, as applied to them by Alabama Department of Insurance, violated the Equal Protection Clause);[2] *In re Levenson*, 587 F.3d 925 (9th Cir. 2009) (constitutional challenge to government's denial of plaintiff's request that his same-sex spouse be added as a beneficiary of his federal benefits); *Ramirez-Altamirano v. Holder*, 563 F.3d 800 (9th Cir. 2009) (constitutional challenge to Board of Immigration Appeals' denial of plaintiff's application for cancellation of removal); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) (constitutional challenge to state land board's denial of leases to plaintiff who bid on them); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) (challenge to application of state cosmetology licensing requirements to plaintiff African hairbraiders; state had enforced requirements against some plaintiffs (*see Cornwell*, 962 F. Supp. 1260, 1264-65 (S.D. Cal. 1997))).[3]

---

[2] Moreover, in *Ward*, the Court only addressed whether the state's goals in enacting the statute were legitimate. It did not address whether the statute's classification was rationally related to those goals. 470 U.S. at 875.

[3] Plaintiffs' reliance on *Gonzales v. Raich*, 545 U.S. 1 (2005), is particularly misplaced, since that case involved a Commerce Clause challenge, not an Equal Protection claim. And in *Vacco v. Quill*, 521 U.S. 793, 800-09 (1997), also relied upon by plaintiffs, the Court's analysis was about whether the distinction between assisting suicide and withdrawing life-sustaining treatment was rational, not whether it was rational as applied to the plaintiffs' particular circumstances. In fact, after concluding that the distinction was rational, the Court commented, "Granted, in some

Certainly, plaintiffs' case is not a constitutional challenge to the discretionary enforcement of a statute or rule to them by government officials. Plaintiffs' proposed pilot program does not exist and is merely hypothetical. *See* Complaint at ¶¶ 146-60, 196, 205, 215-44. There is nothing for the government to enforce or apply § 274e to with respect to plaintiffs. Unlike the cases on which they rely, plaintiffs' challenge is only to the legislative classification contained in § 274e, not to its enforcement or application to them. Contrary to plaintiffs' assertion, they have not alleged a traditional "as applied" challenge along the lines of the cases they cite, because they have not alleged that the statute has been applied to them, nor could they. Merely labeling it an "as applied" challenge is not sufficient.

Moreover, even if the Court were to judge the rationality of § 274e as applied to plaintiffs' self-described, proposed pilot program, plaintiffs' equal protection claim would still fail as a matter of law. It is plaintiffs' burden "to negative every conceivable basis which might support" the challenged statute. *FCC v. Beach Communications*, 508 U.S. 307, 315 (1993) (internal quotations omitted). Certain of the rationales for the statute are fully applicable to plaintiffs' pilot program. Plaintiffs' pilot program would use the methods for bone marrow donation discussed in the Complaint. Those methods require donors to "assume some risks during the process of donation." H. Conf. Rep. No. 98-1127, at 17 (1984); *see also* Def.'s Mtn. to Dismiss at 19-20; Def.'s Reply in Support of Mtn. to Dismiss at 7-8. As such, the donation of bone marrow may "compromise the health of the donor." S. Rep. No. 98-382, at 16-17 (1984). These facts of bone marrow donation justify Congress's concerns about the exploitation of the poor and their ability to give truly informed consent. Thus, those rationales for including bone marrow in § 274e apply with full force to plaintiffs' proposed pilot program. In addition, Congress's concerns that

---

cases, the line between the two may not be clear, but certainty is not required, even were it possible." 521 U.S. at 807-08.

5

"individuals or organizations should not profit by the sale of human organs for transplantation" and that "human body parts should not be viewed as commodities," *id*. at 16, apply to plaintiffs' pilot program.

## II.  DR. WAGNER LACKS STANDING.

Dr. Wagner lacks standing for all of the reasons set forth in Defendant's Motion to Dismiss, Defendant's Reply in Support of his Motion to Dismiss, and the Court's tentative ruling.  Plaintiffs provide no new argument on this issue in their surreply brief, but instead point to allegations in the Complaint that they claim show that "MoreMarrowDonors.org's program is likely to result in Dr. Wagner's being able to perform some transplants using marrow cells from compensated donors."  Surreply at 7.  However, plaintiffs overstate Dr. Wagner's allegations.

The Complaint does not allege that Dr. Wagner believes that financial incentives "will" make a serious impact on the persistent shortage of marrow donors.  *See* Surreply at 7.  Rather, it merely alleges that Dr. Wagner believes that financial incentives "could" make a serious impact on the persistent shortage of marrow donors.  Complaint at ¶ 191.  This is consistent with other allegations in the Complaint about the experimental nature of plaintiffs' pilot program and the speculativeness of the effects of the program on the supply of donated bone marrow.  *See id.* at ¶¶ 146, 148, 205.  The Complaint further states that Dr. Wagner had more than 2,000 patients *in the course of his career* (only 20% of whom were unable to find bone marrow matches), *id*. at ¶¶ 22-23, not that his "patients number in the thousands," implying that he currently has thousands of patients in need of matching bone marrow.  *See* Surreply at 7.  And while Dr. Wagner claims that if the current shortage continues, he will have patients in the future in need of bone marrow transplants who will not be able to find matching donors and who will die as a result, Complaint at ¶¶ 26-27, that is a far cry from alleging that plaintiffs' pilot program is likely to alleviate the shortage, and that Dr. Wagner's patients, or future patients, are likely to find their elusive bone marrow matches from those

6

donations made as a result of plaintiffs' pilot program. Dr. Wagner has not alleged such facts, nor could he with any credibility given the extreme difficulty of finding a bone marrow match alleged in the Complaint. *See, e.g.*, Complaint at ¶ 126 ("In the marrow context, there are literally millions of marrow-cell types and often only a handful of people or even just one person who will be compatible with any given patient. It is also possible for a patient to have a literally unique marrow-cell type for which no donor exists.").

## CONCLUSION

For all the foregoing reasons, and the reasons set forth in Defendant's Motion to Dismiss and Reply in support thereof, defendant Holder respectfully requests that the Court dismiss the Complaint, with prejudice.

Dated: March 26, 2010          Respectfully submitted,

TONY WEST
Assistant Attorney General
GEORGE S. CARDONA
ACTING UNITED STATES ATTORNEY

/s/ Marcia Berman
SHEILA M. LIEBER
MARCIA BERMAN
Attorneys, Federal Programs Branch